Jose Bernardo **JIMENEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–98–00465–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 24, 2002.

Rehearing Overruled Feb. 21, 2002.

Joseph A. Connors, III, McAllen, for Appellant.

John A. Olson, Assistant County & District Attorney, Yolanda De Leon, District Attorney, Brownsville, for Appellee.

Before Chief Justice VALDEZ, and Justices HINOJOSA and RODRIGUEZ.

## OPINION ON REMAND

Opinion by Justice FEDERICO G. HINOJOSA.

A jury found appellant, Jose Bernardo Jimenez, guilty of murder, and the trial court assessed his punishment at confinement for forty years. By twelve issues, appellant contends: (1) the evidence is legally insufficient to show the truck alleged to have been stolen by appellant had a market value of more than $750.00; (2) the evidence is legally insufficient to prove the felony theft element; (3) the trial court erred in making an affirmative deadly weapon finding; (4) the trial court erred in admitting appellant's written confession; (5) the trial court abused its discretion in finding that appellant knowingly, intelligently and voluntarily waived his right to a lawyer when he made a written confession; (6) the trial court erred in denying appellant's motion for new trial; and (7) appellant was subjected to double jeopardy.

In an opinion issued by this Court on August 24, 2000, we held that appellant's confession was illegally gained and erroneously admitted into evidence. *Jimenez v. State,* 28 S.W.3d 702, 706 (Tex.App.—Corpus Christi 2000), *vacated,* 39 S.W.3d 229 (Tex.Crim.App.2001). We reversed the judgment of the trial court and remanded the case to the trial court for further proceedings. *Id.* The Texas Court of Criminal Appeals subsequently vacated our judgment and remanded the case to this Court for our reconsideration in light of that court's opinion in *State v. Ross,* 32 S.W.3d 853 (Tex.Crim.App.2000). We now affirm.

## A. BACKGROUND

On June 4, 1989, Candelario Rivera traveled to South Padre Island to fish with some friends. At approximately 7:30 p.m. he returned to his Ford pickup truck to retrieve some gear. As he and a friend were approaching the vehicle, Rivera noticed the truck was backing out of its parking space. Someone was stealing his truck. Rivera ran toward the truck and hit the window, but was unable to see who was in the vehicle. Rivera then called 911 and reported that someone was stealing his vehicle.

After the vehicle had been reported stolen, police officers in the area were notified to be on the look out for the truck. Upon receiving the dispatch call around 7:48 p.m., Deputy Arnold Flores proceeded to the intersection of Highway 48 and Farm to Market Road 511 because most stolen vehicles head toward the Brownsville Gateway Bridge which goes into Mexico, and

Highway 48 is "one of the only roads that heads that way" from the Island. When a truck, matching the description of the stolen vehicle, first approached Deputy Flores's position, it was traveling at a normal rate of speed. As the vehicle passed Deputy Flores, the officer began to follow it with his lights and sirens on, the vehicle began to travel at a high rate of speed. During the pursuit, the driver of the stolen vehicle traveled at speeds in excess of seventy to eighty-five miles per hour and drove in lanes against the traffic.[1]

The driver of the stolen truck ignored a red light at the intersection of Highway 48 and Price Road. As the vehicle traveled into the intersection, it collided with a yellow vehicle that was turning from Price Road into the intersection.[2] The collision flipped the truck over onto its roof, and the yellow vehicle split in half. There were five individuals in the yellow vehicle, and two were killed in the accident.[3]

As Deputy Flores proceeded into the intersection toward the overturned truck, he saw an individual climbing out of the driver's side window. The individual ran from the intersection to a residential area. Deputy Flores began to chase after him, but lost the individual in the residential area. Other officers joined the search for the individual, and appellant was found hiding on the roof of a house by Deputy George Delgado.

## B. PROCEDURAL HISTORY

On October 25, 1989, appellant was indicted for the felony murder of Brenda

---

1. Highway 48 is a four lane road with a turning lane in the middle. The speed limit on Highway 48 in this area was 55 mph.

2. The victim's vehicle had a green light and the right of way.

3. One of the accident victims who was fatally injured was Brenda Lee Alvarado, a two-year-old child who was in the backseat of the vehicle. The indictment in this case alleged that appellant caused the death of Brenda Lee.

Lee Alvarado.[4] Appellant was also indicted for the felony murder of Maria de Jesus Alvarado.[5] On February 9, 1990, the State informed the trial court that the cases would be tried separately. On that same day, after a pretrial hearing, the trial court denied appellant's motion to suppress his confession. The trial began on February 20, 1990, and on February 22, 1990, the jury found appellant guilty of murder as charged in the indictment. On April 5, 1990, the trial judge assessed appellant's punishment at forty years imprisonment and ordered him to pay full restitution in the amount of $61,167.21. The judgment in cause number 89–CR–1060 was signed on May 20, 1990.

On May 14, 1990, appellant pleaded guilty to the indictment in cause number 89–CR–1059. The trial court found him guilty and assessed his punishment at sixty years imprisonment. The judgment in cause number 89–CR–1059 was signed on May 18, 1990.

On June 2, 1998, the case was transferred from the 107th District Court of Cameron County, Texas to the 197th District Court of Cameron County, Texas. On July 15, 1998, the Texas Court of Criminal Appeals granted appellant's request for a writ of habeas corpus and allowed him an out-of-time appeal because his trial counsel had failed to file a notice of appeal

or withdraw as counsel. On August 25, 1998, appellant filed his notice of appeal. On August 31, 1998, appellant filed a motion for new trial. On September 14, 1998, the trial court denied appellant's motion for new trial.

### C. THE SUPPRESSION HEARING

In his fourth, fifth, and sixth issues, appellant contends the trial court erred in failing to suppress his written confession.[6] Appellant argues the statement was obtained after he invoked his right to counsel, and the trial court abused its discretion in finding that appellant had knowingly, intelligently, and voluntarily waived his right to counsel. In his seventh, eighth, and ninth issues, appellant contends the trial court erred in admitting his confession during trial because it was involuntary in that it was a product of coercion through the "acore tactics" of law enforcement officers.

Appellant, in his pretrial motion to suppress, alleged that his confession resulted from: (1) inadequate warning of statutory and constitutional rights; (2) involuntariness because at the time the confession was made appellant was still under the influence of alcohol and in a state of shock; (3) improper inducements by law enforcement officers; (4) coercion through the "acore tactics" of law enforcement officers

---

**4.** The indictment that alleged appellant caused the death of Brenda Lee Alvarado was assigned trial court cause number 89–CR–1060. This case is the appeal of cause number 89–CR–1060.

**5.** The indictment that alleged appellant caused the death of Maria de Jesus Alvarado was assigned trial court cause number 89–CR–1059. We do not address cause number 89–CR–1059 because it is not the subject of this appeal.

**6.** In his original brief to this Court, appellant raised twelve issues, with issues four, five,

and six relating to the motion to suppress which this Court found to be dispositive. On remand, he has filed a brief containing fifty-four issues—the original twelve issues plus an additional forty-two. The forty-two issues, while extensively addressing the issues raised by the court of criminal appeals, do not present any new substantive issues before this Court that were not present in appellant's original brief. Therefore, to simplify matters, we will address appellant's issues as they are referred to in his original brief, with due deference to the arguments presented in his brief on remand.

immediately before making his confession; (5) the lack of advice concerning the nature of the offense that the interrogation related to; and (6) denial of the right to counsel because the statement was obtained by continuing interrogation after appellant had requested to speak to an attorney.

At the hearing on the motion to suppress appellant's confession, Sergeant Luis Martinez and appellant testified.

Martinez testified he first contacted appellant on June 4, 1989, at approximately 8:20 p.m. Martinez had been called by Lieutenant George Gavito to come to the Sheriff's Department to interview a suspect apprehended in a traffic accident. Appellant had been arrested for his involvement in a fatal traffic accident. Before interviewing appellant, Martinez warned him of his constitutional rights. Appellant was cooperative and never indicated he wanted to terminate the interview or talk to a lawyer. Martinez made no promises to appellant, did not coerce him, and was not wearing a gun during the interview. Martinez believed that appellant was not intoxicated during the interview, and appellant did not exhibit the symptoms of shock. After giving a statement, appellant was afforded the opportunity to read it before he signed it. The signing of the statement was witnessed by Deputy Roy Armendariz and Elsie Guerra.

On cross-examination, Martinez testified he did not know how long appellant had been in custody before the interview. He questioned appellant for about forty minutes, but knew nothing about the conditions under which appellant was kept before or after the interview. Martinez did not know if anyone else had talked to appellant before he arrived to interview him. Roy Armendariz and Elsie Guerra were present during the entire interview.

Appellant testified that Lieutenant Gavito took him from the scene of the accident to the Sheriff's Department. While in the car, Gavito mistreated him and continually asked him questions, but at no time did Gavito inform appellant of his rights. Appellant told Gavito that he needed an attorney. Once at the Sheriff's Department, Gavito continued to beat appellant in the presence of two other deputies. Before Martinez came to question appellant, Gavito told appellant "to say everything, to testify." And he kept telling [him], "Yes, you are the one that stole the cars and he would beat up on [him]." Appellant told Gavito that "[he] didn't know anything." Appellant intended that to mean that he did not want to say anything to the officers. Gavito told appellant to say anything that could help him.

When appellant made the statement to Martinez, Guerra and Armendariz were not present. Martinez spoke to appellant in English and appellant "[did] not understand much English." Appellant did not read the statement he made before he signed it. Appellant made the statement because he was scared as a result of the treatment he received from Gavito. Gavito said to him, "You're going to go with [Martinez]. You're going to talk to him, and you're going to tell him everything he tells you to say."

At the conclusion of the suppression hearing, the trial court overruled the motion to suppress "only with respect to whether or not it complies with the requirements of the Code of Criminal Procedure on voluntary statements." The court determined that appellant's statement was voluntarily and freely made, without compulsion or coercion. The court further found that appellant waived his rights to counsel and to remain silent.

### 1. *Right to Counsel*

Appellant, in his motion to suppress, through evidence produced at the hearing and in his appellate brief, asserts that the police continued to interrogate him after he invoked his right to counsel. The State, in its evidence at the hearing and in its brief on appeal, relies solely on Martinez's assertion that appellant did not invoke his right to counsel and, in fact, waived his rights before confessing.

 Martinez's testimony rebuts the assertion that appellant requested counsel from him before and during his interrogation. As a general rule, the appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Accordingly, because the trial court's ruling in this respect is supported by the record, it will not be disturbed.

However, appellant's testimony that he told Gavito he needed a lawyer was not contradicted by the State. In addition, the State did not explain the absence of Gavito who could have contradicted appellant's assertion.

In our original opinion in this case, we followed *Moore v. State*, 700 S.W.2d 193, 202 (Tex.Crim.App.1985), which held that whenever an accused's testimony reflects that he was unlawfully caused to make a written confession, and his testimony is uncontradicted, then his written confession is inadmissible as a matter of law. *Id.*

 Recently, in *Ross*, the court of criminal appeals reiterated that:

in a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.

Accordingly, *the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted.* This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record.

*Ross*, 32 S.W.3d at 855 (emphasis added). In reviewing a trial court's decision, the appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's fact findings. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). If the trial court's fact findings are supported by the record, the appellate court is not at liberty to disturb the findings absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991). On appellate review, the court will address only the question of whether the trial court properly applied the law to the facts. *Romero*, 800 S.W.2d at 543.

As discussed in *Guzman*, the appropriate level of appellate review is:

The appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate court should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review de novo "mixed question of law and fact" not falling within this category.

*Guzman*, 955 S.W.2d at 89. *Guzman* applies to appellate review of a motion to

suppress a confession. *Hernandez v. State*, 957 S.W.2d 851, 852 (Tex.Crim.App. 1998); *Gomes v. State*, 9 S.W.3d 373, 376 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

■ In the present case, the only evidence presented concerning the failure of the police to honor appellant's right to an attorney and the involuntary nature of his confession is the testimony of appellant. Although appellant's allegations are uncontroverted, the resolution of the issue turns on an evaluation of credibility and demeanor because there is an indication that the trial court did not believe appellant's testimony. *See Ross*, 32 S.W.3d at 858. As such, we conclude this case falls within the second category of review under *Guzman*. Therefore, we will apply the "almost total deference" standard of review.

We note that in *Ross*, the court of criminal appeals further clarified its holding in *Maestas v. State*, 987 S.W.2d 59 (Tex. Crim.App.1999). *Maestas* involved a *de novo* review of a defendant's motion to suppress a confession alleging a violation of the Fifth Amendment because the case did not involve an evaluation of credibility of any witness. *Id.*

In *Maestas*, the police officer's testimony regarding Maestas's arrest and confession was uncontroverted and the trial court denied the motion to suppress. *Id.* at 60–61. The court of criminal appeals found that a *de novo* review was appropriate as the resolution of the issue did not turn on an evaluation of credibility and demeanor. *Id.* at 62. In footnote eight of the opinion, the court explained its application of a *de novo* review:

> This is because the officers' testimony as to what transpired from Appellant's arrest up to Appellant's confession is uncontroverted. Appellant did not provide conflicting testimony or contradict the officers' presentation of the facts in any

way. In addition, Appellant did not present any complaints, for example complaints concerning the conditions of her jail cell, or complaints that she was coerced, intimidated, or forced to speak with police. Under different circumstances, where the police and the appellant provided conflicting testimony, resolution of this question would involve an evaluation of credibility and demeanor because the trial court would have to decide which testimony deserved more weight. In that case, our review would "afford almost total deference" to the trial court's determination, in accordance with *Guzman*.

*Id.*

In *Ross*, the court of criminal appeals explained that footnote eight is a correct statement of the law because "when faced with conflicting testimony, the trial judge will have to determine which testimony is the more credible." *Ross*, 32 S.W.3d at 858. As compared to an "almost total deference" standard of review, the court clarified that a *de novo* review was appropriate in *Maestas* because:

> the dispositive facts were uncontroverted and *there was no indication that the trial court did not believe that testimony*. In other words, the trial court's ruling was consistent with the uncontroverted testimony. Because it suggests that an issue turns on credibility and demeanor only when the testimony is controverted, we expressly disavow footnote eight of *Maestas*.

*Id.* (emphasis in original).

Appellant's assertion that he requested an attorney is based upon his testimony alone. The trial judge was free to believe or disbelieve all or any part of a witness's testimony. Here, the court apparently disbelieved appellant's testimony. After having been advised of his legal rights,

appellant agreed to and did give a written statement. Applying the "almost total deference" standard of review, we hold the trial court did not abuse its discretion in admitting appellant's statement into evidence. Appellant's fourth, fifth, and sixth points of error are overruled.

### 2. *Involuntary Confession*

When a question is raised concerning the voluntariness of a statement of an accused, the trial court must conduct a hearing outside the jury's presence and determine whether the statement was voluntary. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979). After conducting the hearing, the trial court in this case determined that appellant's confession was voluntary. However, the trial court did not enter an order "stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based...." Accordingly, we abated this appeal and allowed the trial court to enter such an order. *See Id.* The trial court made the following findings of fact:

1. The Defendant made the voluntary statement that was offered as State's Exhibit No. 1.

2. Prior to making the statement, the Defendant received the following warnings:

 (a) that he was suspected of committing a felony murder;

 (b) that he had a right to remain silent;

 (c) that he had a right not to make any statement at all;

 (d) that any statement he made may be used against him at trial;

 (e) that any statement he made may be used as evidence against him;

 (f) that he had a right to have a lawyer present to advise him prior to and during any questioning; and

 (g) if he was unable to employ a lawyer, he had a right to have a lawyer appointed to him to advise him prior to and during any questioning.

3. The Defendant received these warnings from Deputy Martinez, and knowingly, intelligently, and voluntarily waived his rights prior to signing the statement.

4. The Defendant signed SX–1, which was made freely and voluntarily, without compulsion and coercion, and shows on its face that the warnings were made to the Defendant by Deputy Martinez, and that the statement was given voluntarily, knowingly, and intelligently.

Based on these findings, the trial court made the following conclusions:

1. The Defendant's suppression motion is overruled only with respect to whether or not it complies with the requirements of the Code of Criminal Procedure on voluntary statements.

2. The State is instructed that the extraneous offense mentioned in SX–1's Para. 1 will be obliterated and excluded at this point so that they will not be shown to the jury unless the appropriate offer is made out of the jury's presence.

▇▇▇ The determination of whether a statement is voluntary is a mixed question of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex.Crim.App.2000). Appellate courts should afford almost total deference to trial courts' rulings on such "mixed questions" if, as here, their resolution depends on an evaluation of credibility and demeanor. *Id.* A trial judge who views the witnesses and hears their testimony can better evaluate their credibility than an appellate judge who must rely on

the record. *Id.* In such cases, our review is essentially limited to determining whether the trial court properly applied the law to the facts. *See Romero*, 800 S.W.2d at 543.

When a defendant presents evidence raising a voluntariness question, the prosecution must controvert that evidence and prove voluntariness by a preponderance of the evidence. *State v. Terrazas*, 4 S.W.3d 720, 725 (Tex.Crim.App.1999). The State need not rebut appellant's assertions, but only controvert them. *Muniz v. State*, 851 S.W.2d 238, 252 (Tex.Crim.App. 1993); *Dunn v. State*, 721 S.W.2d 325, 333 (Tex.Crim.App.1986). When the case presents a controverted issue to the trial court, the trial court acts exclusively as the factfinder, assessing the credibility of the witnesses and the weight to be accorded their testimony. *Gentry v. State*, 770 S.W.2d 780, 790 (Tex.Crim.App.1988). If the trial court's resolution of a controverted issue is supported by the record, a reviewing court should not disturb the trial court's decision. *Dunn*, 721 S.W.2d at 336.

The record reflects that appellant heard his rights read, and that these rights were also listed on the first page of his signed statement. Appellant told Officer Martinez that he understood his rights. Appellant also signed a waiver of his rights and agreed to talk to Officer Martinez. Officer Martinez testified that appellant did not appear to be intoxicated from the consumption of alcohol. Martinez also said that appellant did not appear to be in shock. Officer Martinez testified that appellant was not coerced or threatened, nor was he promised anything in exchange for his confession. Appellant did not ask to stop the interrogation and did not ask that his attorney be present.

The only contradictory testimony about the interrogation came from appellant. As the trial court was the sole judge of the

credibility and weight to be given the testimony, the court was free to believe or disbelieve all or part of any witness's testimony. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App.1993). That the trial court found appellant's testimony less credible than that of the officer does not establish an abuse of discretion.

Because the record supports the findings of the trial court, we hold the trial court did not abuse its discretion by denying appellant's motion to suppress and by admitting the confession at trial. We overrule appellant's eighth, ninth, and tenth issues.

## D. LEGAL INSUFFICIENCY

In his first and second issues, appellant contends the evidence is legally insufficient to prove the felony theft predicate element in his murder offense. Appellant argues the evidence is insufficient to prove the value of the truck stolen, and the State failed to prove that appellant's possession of the truck was any more than unauthorized use of a motor vehicle.

When we review the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Rosillo v. State*, 953 S.W.2d 808, 811 (Tex.App.—Corpus Christi 1997, pet. ref'd). The jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, is free to accept or reject all or any part of the testimony of any witness. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1981); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986); *Bowden v.*

*State*, 628 S.W.2d 782, 784 (Tex.Crim.App. 1982). Contradictions or conflicts between the witnesses' testimony do not destroy the sufficiency of the evidence; rather, they relate to the weight of the evidence, and the credibility the jury assigns to the witnesses. *See Weisinger v. State*, 775 S.W.2d 424, 429 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). The jury exclusively resolves conflicting testimony in the record. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim.App.1995). A reviewing court may not substitute its conclusions for that of the jury, nor may it interfere with the jury's resolution of conflicts in the evidence. *Id.*

### 1. *Truck's Market Value*

Appellant contends there was "no evidence of the fair market value of the grey Ford pickup truck on or about June 4, 1989...." He argues that the evidence is legally insufficient to support a conviction for the predicate offense of felony theft since the record does not show that the truck's market value, when it was stolen, was more than $750.

The former version of penal code section 31.03 stated:

§ 31.03 **Theft**

(a) a person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

\* \* \* \* \*

(e) Except as provided by Subsection (f) of this section, an offense under this section is:

\* \* \* \* \*

(4) a felony of the third degree if:

(A) the value of the property stolen is $750 or more but less than $20,000....

Act of June 14, 1985, 69th Leg., R.S., ch. 599, § 1, 1985 Tex. Gen. Laws 2244–46 (amended 1993) (current version at TEX. PEN.CODE ANN. § 31.03 (Vernon Supp. 2001)).[7]

Value is set out in penal code section 31.08 as:

§ 31.08 **Value**

(a) ... value under this chapter is:

(1) the fair market value of the property or service at the time and place of the offense; or

(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft.

TEX. PEN.CODE ANN. § 31.08 (Vernon 1994). "Value" is defined as market value, that is, the amount of money the property in question would have sold for in cash, given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim.App.1991); *McNiel v. State*, 757 S.W.2d 129, 132 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). When the owner testifies, the presumption is that he is testifying to an estimation of the fair market value. *See Scott v. State*, 741 S.W.2d 435, 437 (Tex.Crim.App.1987); *Trammell v. State*, 511 S.W.2d 951, 954 (Tex.Crim. App.1974). The court of criminal appeals has held that:

When the owner of the property is testifying as to the value of the property, he or she may testify as to his or her opinion or estimate of the value of the property in general and commonly understood terms. The testimony of this nature is an offer of the witness' best

**7.** This penal code section has been revised since the 1989 version, and changes were made in the values of property stolen. Because the former values are pertinent to this case, we will refer to the version in effect in 1989.

knowledge of the value of his property. Such testimony will constitute sufficient evidence for the trier of fact to make a determination as to value based on the witness' credibility. This is true even in the absence of a specific statement as to "market value" or "replacement value." *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex.Crim.App.1986).

The only testimony concerning the value of the pickup truck came from Candelario Rivera, the owner of the pickup truck.[8] Rivera testified at trial that his pickup had been demolished and that he received between $750 and $20,000 for his pickup from the insurance company. Rivera also testified that he had purchased the vehicle in May 1988.

■■■ We conclude the evidence that Rivera received between $750 and $20,000 from the insurance company upon the theft and subsequent wrecking of this truck, is legally sufficient to prove the value of the truck. While we find no specific statement in the record concerning the market value of the truck, we hold that Rivera's reference to the amount he received from the insurance company for his truck is in commonly understood terms, and a rational jury could have found that the value of the truck was more than $750, thus, enough to constitute a felony. Appellant's first issue is overruled.

**8.** At trial, appellant tried to imply that Candelario Rivera was not the owner of the truck; that Candelario's father was the actual owner. We find no evidence in the record showing that Candelario Rivera was not the owner of the truck. Regardless, the jury charge defined "owner" as "a person who has title to the property, possession of the property, or a greater right to possession of the property than the person charged." Therefore, even if Candelario's father was the actual owner of the truck (*i.e.*, he had title to the truck), Candelario is considered an owner for our consideration because he had greater right to possession of the truck than appellant.

### 2. *Felony Theft*

Appellant contends the evidence is legally insufficient to prove the felony element of his murder charge. Appellant asserts the evidence does not support a finding that at the time of the collision with the vehicle in which Brenda Lee was a passenger, he was in the immediate flight from the theft of Candelario Rivera's truck.

Section 19.02(a)(3) of the Texas Penal Code states:

(a) A person commits an offense if he:

\* \* \* \* \*

(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Act of June 14, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 913 (amended 1993) (current version at Tex. Pen.Code Ann. § 19.02(b)(3) (Vernon 1994)).[9]

The trial court's charge to the jury stated:

**9.** Appellant was indicted under the former version of Texas Penal Code section 19.02. In the former version, the elements of felony murder were set out in section 19.02(a)(3). In the current version, the elements of felony murder are set out in 19.02(b)(3). The only change made in the current version is that it states "other than manslaughter," rather than "other than voluntary or involuntary manslaughter." We will reference the former version.

Now if you find from the evidence beyond a reasonable doubt that on or about the 4th day of June, 1989, in Cameron County, Texas, the Defendant, Jose Bernardo Jimenez, did intentionally or knowingly commit a felony, namely theft, and *in the immediate flight from the commission of said felony,* the Defendant committed an act clearly dangerous to human life that caused the death of Brenda Lee Alvarado, said act being: driving an automobile in a manner that caused it to strike the vehicle in which Brenda Lee Alvarado was a passenger, then you will find the Defendant guilty of murder as charged in the indictment.

(Emphasis added).

■ It appears appellant is claiming that the only basis for the jury's finding that he was "in the immediate flight from the commission" of the theft of Candelario Rivera's truck is his confession, which was unconstitutionally obtained. Appellant argues that this Court should not be allowed to use unconstitutionally obtained evidence to support an appellate claim of evidence sufficiency. While we do not agree that the confession was obtained unconstitutionally, it does not matter because we conclude that the evidence is sufficient to prove immediate flight from the theft, even without the confession evidence.

The evidence at trial showed the following:

(1) Candelario Rivera's truck was stolen from South Padre Island.

(2) Officer Flores spotted the stolen vehicle on Highway 48 heading in the direction of the International Bridge.

(3) When Officer Flores began to follow appellant, appellant drove the truck at high rates of speed and swerved in and out of lanes and into oncoming traffic.

(4) The truck ran a red light at the intersection of Highway 48 and Price Road, at which time it collided with the vehicle occupied by Brenda Lee Alvarado.

(5) Appellant exited the vehicle and ran into a nearby neighborhood. Officers searched the neighborhood and found appellant hiding on the roof of a house.

(6) When appellant was found, officers discovered an ignition cover on his person. The officers retrieved a dent puller from the truck driven by appellant. The dent puller is commonly used by car thieves to remove ignitions from a vehicle's steering column in order to enable them to hot wire the vehicle.

(7) As a result of the collision, Brenda Lee Alvarado died.

■ A presumption of a defendant's guilt of theft sufficient to sustain a conviction for that offense may arise from the defendant's possession of stolen property. *Todd v. State,* 601 S.W.2d 718, 720 (Tex.Crim.App.1980). To warrant such a presumption the possession must be personal, recent, and unexplained, and must involve a distinct and conscious assertion of right to the property. *Id.; Rodriguez v. State,* 549 S.W.2d 747, 749 (Tex.Crim.App.1977). While flight itself does not amount to a presumption of guilt, it is a circumstance from which an inference of guilt may be drawn. *Arivette v. State,* 513 S.W.2d 857, 862 (Tex.Crim.App.1974).

■ The crux of determining whether the evidence is sufficient is the fact that the trier of fact—not the appellate court—was free to accept or reject all or any portion of any witness's testimony. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testi-

mony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

We conclude that appellant's unexplained possession of Rivera's pickup truck, his obvious assertion of control of the truck (he was driving it), and the truck's recent theft, establishes a presumption of appellant's theft of Rivera's truck. Appellant's reckless driving of the vehicle, including high rates of speed and the swerving in and out of the lanes of traffic, furthers the inference that appellant was participating in the theft and that he was in immediate flight from the theft.

Accordingly, we conclude the evidence is sufficient to allow a rational trier of fact to find that appellant was in the immediate flight from the theft of Candelario Rivera's truck when he ran the red light at the intersection of Highway 48 and Price Road and collided with the vehicle occupied by Brenda Lee Alvarado which consequently led to the death of Brenda Lee Alvarado. Appellant's second issue is overruled.

### E. DEADLY WEAPON FINDING

In his third issue, appellant contends the trial court erred in making an affirmative finding that he used a deadly weapon. Appellant asserts the State did not give him pretrial notice that it intended to seek a deadly weapon finding.

■ A defendant is entitled to notice that the State intends to seek an affirmative finding that he used a deadly weapon during the commission of the charged offense. *Ex parte Patterson,* 740 S.W.2d 766, 775 (Tex.Crim.App.1987), *overruled on other grounds by Ex parte Beck,* 769 S.W.2d 525, 528 (Tex.Crim.App.1989). While it is not necessary such notice be contained in the indictment, it must be in writing and reasonably calculated to inform the defendant the use of a "deadly weapon will be a fact issue at the time of prosecution." *Ex parte Beck,* 769 S.W.2d

525, 526 (Tex.Crim.App.1989); *see Luken v. State,* 780 S.W.2d 264, 266 (Tex.Crim. App.1989).

■ The State contends the indictment was sufficient to put appellant on notice that it would be seeking a deadly weapon finding. The indictment in this case states, in relevant part, as follows:

Jose Bernardo Jimenez, hereinafter called Defendant, on or about the 4th day of June A.D. One Thousand Nine Hundred and Eighty Nine ... did then and there unlawfully intentionally and knowingly commit a felony, namely THEFT and in the immediate flight from the commission of said felony, the Defendant committed an act clearly dangerous to human life that caused the death of BRENDA LEE ALVARADO, said act being: driving an automobile in a manner that caused it to strike the vehicle in which BRENDA LEE ALVARADO was a passenger, against the peace and dignity of the State.

■ The court of criminal appeals and the intermediate appellate courts have routinely held that an allegation of serious bodily injury or death caused by some act or instrument is sufficient notice for a deadly weapon finding. *See, e.g., Ex parte McKithan,* 838 S.W.2d 560, 561 (Tex.Crim. App.1992) (recognizing that motor vehicle can be deadly weapon in involuntary manslaughter case for purposes of providing notice in indictment). A motor vehicle which is actually used to cause the death of a human being is a deadly weapon. *Tyra v. State,* 897 S.W.2d 796, 798 (Tex.Crim. App.1995). Accordingly, we conclude that the allegation in the indictment that appellant caused the death of Brenda Lee Alvarado by driving an automobile is sufficient to give him notice that the State was seeking a deadly weapon finding. *Cf. Sanders v. State,* 963 S.W.2d 184, 187–89 (Tex.

App.—Corpus Christi 1998, pet. ref'd) (merely alleging in indictment that defendant committed "aggravated assault," as felony basis for charge of burglary of habitation, was not equivalent to alleging that he caused serious bodily injury or death by some act or with some instrument or weapon, such that allegation would suffice to give written notice of state's intent to seek affirmative deadly weapon finding as felony enhancement). Appellant's third issue is overruled.

## F. DOUBLE JEOPARDY

In his tenth, eleventh, and twelfth issues, appellant contends the trial court erred in denying his motion for new trial because double jeopardy bars his convictions for the felony murder of Brenda Lee Alvarado and Maria de Jesus Alvarado. Appellant argues that since the judgment in cause number 89–CR–1060 was entered after the judgment in cause number 89–CR–1059, his constitutional right against double jeopardy has been violated and the trial court should have granted him a new trial. Appellant argues that he has been subjected to "double sentences for twice violating Texas Penal Code § 19.02(a)(3) during the immediate flight from a single felony theft of Rivera's pickup."

The granting or denying of a motion for new trial lies within the sound discretion of the trial court. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App. 1993). We reverse "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* at 695 n. 4. We may not substitute our judgment for that of the trial court, but rather must decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

Appellant did not raise his double jeopardy claim before the charge was submitted to the jury. Appellant alleged double jeopardy in his motion for new trial. The question presented is whether appellant can now raise his double jeopardy contention on appeal.

"Because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal … when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex.Crim.App.2000). Under *Gonzalez*, the critical question is not whether the defendant raised the double jeopardy issue in the trial court, but whether the record before the appellate court clearly reflects a double jeopardy violation. If a double jeopardy violation is clearly apparent, the defendant will prevail on appeal; if a double jeopardy violation is not apparent, the defendant's claim fails on the merits regardless of whether he objected at trial. *Id.* In other words, raising the issue in the trial court is important insofar as it is necessary to make a clear record on which to base a double jeopardy claim on appeal. *Id.* at 645–46. Applying *Gonzalez*, we now determine whether a double jeopardy violation is clearly apparent on the face of the record.

The Fifth Amendment to the United States Constitution stipulates that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This provision has been made applicable to the states by incorporation into the Due Process Clause of the Fourteenth Amendment. *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The Texas Constitution also proscribes double jeopardy, but it does not require separate analysis, because the double jeop-

ardy ban under the Texas Constitution affords no broader protection than the federal constitution. *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990); *see* TEX. CONST., art. I, § 14. The double jeopardy clause specifically protects against three distinct abuses by state authority: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple prosecutions for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex.Crim.App.1990); *Gonzalez v. State*, 973 S.W.2d 427 (Tex.App.—Austin 1998, no pet.). Appellant invokes the third protection.

The double jeopardy guarantee against multiple punishments for the same offense prevents the sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex.Crim.App.1992); *Gonzalez*, 973 S.W.2d at 429.

Appellant argues that he has been punished twice for a single offense of felony theft. We disagree with appellant's assessment that only one offense occurred.

The protection against double jeopardy is inapplicable where separate and distinct offenses occur during the same transaction. *Spradling v. State*, 773 S.W.2d 553, 556 (Tex.Crim.App.1989). Cumulative punishment, consistent with the double jeopardy clause, may be imposed where separate offenses occur in the same transaction, as long as each conviction requires proof of an additional element which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Although *Blockburger* addressed a situation where the criminal conduct violated separate statutory provisions, its rationale is instructive to those situations where multiple victims are injured in violation of a single statute. *Spradling*, 773 S.W.2d at 553. In *Blockburger*, the Supreme Court set forth the applicable test:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. "At trial there may be a substantial overlap in the proof of each offense; however, it is the separate statutory elements of each offense which must be examined under this test." *Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex.Crim.App.1980) (op. on rehearing). *See Ex parte Scott*, 633 S.W.2d 823, 825 (Tex.Crim.App.1980) (op. on rehearing) (holding there is no double jeopardy violation in applicant's convictions for aggravated rape and robbery). The double jeopardy clause of the Fifth Amendment does not restrict a legislature from carving as many offenses as it chooses from one transaction so long as each offense requires "proof of a fact which the other does not." *Phillips v. State*, 787 S.W.2d 391, 394 (Tex.Crim.App.1990).

In *Ex parte Rathmell*, 717 S.W.2d 33, 35 (Tex.Crim.App.1986), the court of criminal appeals held that in prosecutions for involuntary manslaughter involving multiple deaths, each individual death constitutes a complete and distinct offense. *Rathmell* involved prosecutions under only one statute, and therefore did not directly apply the *Blockburger* test, which involved prosecutions under different statutes. Accordingly, each death constitutes a separate "allowable unit of prosecution." *Id.* This is so even where the second death

was contemporaneous with the death for which the accused was first tried. *Id.* The Double Jeopardy Clause, therefore, does not bar multiple convictions in situations where separate and distinct offenses occur during the same transaction. *Id.*

In *Spradling,* 773 S.W.2d at 554, Spradling struck and killed two women walking on the shoulder of a road and was separately indicted for failing to stop and render aid to each of them. The court of criminal appeals held: "It is universally accepted that when a defendant, by a single physical act, assaults or kills two or more persons, the Double Jeopardy Clause does not bar separate prosecutions for each victim assaulted or killed." *Id.* at 556.

The court of criminal appeals has "consistently held defendants, while operating a motor vehicle and committing an unlawful act, may be convicted for each person injured and/or murdered, in violation of a single statute." *Phillips,* 787 S.W.2d at 394. To convict appellant for the felony murder of Brenda Lee Alvarado requires proof different than the evidence necessary to convict him for the felony murder of Maria de Jesus Alvarado. Even though the proof of appellant's underlying unlawful act is the same, the death of Brenda Lee is mutually exclusive of the death of Maria de Jesus. Each offense requires proof of a fact which the other does not, *i.e.,* the identity of each victim, thus meeting the test established in *Blockburger.*

The Legislature has the power to establish and define crimes. If the Legislature desired to establish separate and distinct crimes for the felony murder of each individual killed in a car accident caused by the defendant in the immediate flight from the commission of a felony, neither the Federal nor State Constitution would prevent the State from prosecuting for each offense. Thus, we must decide whether the Legislature intended that the defendant may be prosecuted for each victim involved in a car accident.

Section 19.02(a)(3) of the Texas Penal Code states:

(a) A person commits an offense if he:

\* \* \* \* \*

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes **the death of an individual.**

Act of June 14, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 913 (amended 1993) (current version at Tex. Pen.Code Ann. § 19.02(b)(3) (Vernon 1994)) (emphasis added).

The wording of section 19.02 is unambiguous. It provides that a person commits the offense of felony murder if he causes the death of an **individual.** *Id.* Double jeopardy has no application because it is the legislative intent to prohibit acts clearly dangerous to human life and, accordingly, to enforce this intent by prescribing the appropriate punishment for each such offense. Thus, a defendant commits a distinct offense against any person he injures and each of those injured constitutes a separate allowable unit of prosecution.

Appellant did not timely raise his double jeopardy claim in the trial court. A double jeopardy violation is not clearly reflected on the face of the record before us. For these reasons, we conclude the trial judge did not abuse his discretion in denying appellant's motion for new trial because appellant was not subjected to double jeopardy by his sentences for the deaths of Brenda Lee Alvarado and Maria de Jesus

Alvarado. Appellant's tenth, eleventh, and twelfth issues are overruled.

The judgment of the trial court is affirmed.