NO. 07-02-0158-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 12, 2003

_____

CHARMAINE EVETTE MOORE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY CRIMINAL COURT AT LAW NO. 1 OF HARRIS COUNTY;

NO. 1076954; HONORABLE REAGAN C. HELM, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellant Charmaine Evette Moore pleaded not guilty, but was convicted by a jury of prostitution, and sentenced by the trial court to 45 days confinement. By this appeal, she claims the evidence is legally and factually insufficient to support the verdict. Based upon the following rationale, we affirm.

The Fifth Ward in Houston is known as a high crime area. Following numerous complaints by Fifth Ward residents, the "tact unit" of the Houston Police Department was dispatched there to conduct a prostitution sting. During the early morning hours of September 7, 2001, Officer Ben Tien, an undercover officer with the vice squad and a member of the sting operation, arrived at the Fifth Ward in an unmarked police vehicle and noticed a lot of foot traffic, "females entering and exiting vehicles," and other activity consistent with prostitution. As he drove down one of the streets in the Ward, he noticed appellant, who was standing next to a minivan. When Tien pulled his vehicle close to hers, appellant approached the open window on the driver's side where Tien was sitting. Appellant explained her business was "body sensation rubbing therapy" and offered to provide Tien with a massage in exchange for $100. She questioned what business Tien had in that area and inquired repeatedly whether he was a police officer. Tien responded that he was a college student and was in the area on a pledge assignment for his fraternity. When Tien explained he had only $75 and wanted to purchase oral sex and sexual intercourse, appellant "nodded her head and she agreed to it" and pointed to the nearby hotel. Tien drove in the direction of the hotel, and appellant followed in her vehicle. Tien then initiated the pre-determined "bust" signal.

T.L. Sarton was the first officer to respond to the bust signal, and it was he who arrested appellant. After the arrest, Sarton discovered appellant's boyfriend attempting to hide in the back seat of the van; however, appellant denied knowing he was there. During a brief search of the vehicle, Sarton located a flier indicating appellant worked for an

2

"Exotic Mobile Stress Clinic." Conspicuously absent from the van was massaging oil or anything related to massage therapy. Sarton did, however, locate a leather whip with studs. At trial, the Chief of Investigations for the Texas Department of Health for the Professional Licensing and Certification Division, the agency responsible for overseeing the "Massage Registration Program" for the state, testified "there was no record in the Registration Licensing Program files of - [Charmaine Evette Moore] having a registration in the State of Texas."

Appellant testified she was not prostituting herself on the night of the offense, but instead was working as a massage therapist. According to appellant, she told Tien, "I do not have sex. We do massages. Hot oil rubdowns. And, that's it." She asked Tien several times if he was a "cop" because she was afraid he was trying to "entrap" her. Appellant maintained she only agreed to perform a "session" for him for $75. After directing Tien to a hotel designated for the "session," appellant claimed she waited for approximately ten minutes in the minivan before deciding not to follow through with it and driving, instead, to the hotel to visit a friend who was staying there. Appellant admitted she had a prior conviction for prostitution in March of 2000 and several arrests for hitchhiking and trespass, but averred she had given up that vocation and was actively pursuing a career as a massage therapist. Appellant also conceded that, although she worked for a woman named Lisa Lynn Coleman, the phone number listed on the flier was her home number, and she was "the only one who answers the phone."

3

During the State's rebuttal, Officer Robert Thromaelen testified that during the course of another vice investigation, he called the phone number listed on the flier recovered from appellant's minivan. Thromaelen visited with the woman who answered the phone and purported to be interested in the services offered in the flier. Although the officer did not discuss sex with the woman, she suggested he "might want to wait a week [to schedule an appointment] because she was on her 'period.'"

Also during the State's rebuttal, Officer Grace Das, a seven year veteran of the vice squad, testified she conducted a "street prostitution investigation" during the "midnight hours" on June 1, 2000, in a "common area in Houston for prostitution activity." Das further averred "it was, on that night, typical of most nights with prostitution, and where prostitutes came out into the area." Finally, Das identified appellant as one of the individuals she arrested that night for hitchhiking after observing her flag down various cars and enter them. During cross-examination, Das acknowledged she was unable to prove there was an offer for sex or that money exchanged hands, and was, thus, was unable to arrest appellant for prostitution on that night.

The State also called Sarton to testify in rebuttal. He described an encounter he had with appellant only a few weeks after she had been arrested for the September 7, 2001 incident. Sarton explained he saw her "out on the street" and told her he "thought it was brave of her to be out there working the streets or standing on the corner so shortly

4

after her arrest." According to Sarton, appellant told him "she was out there because she needed the money."

While recognizing "the general rule that credibility of witnesses will not be reviewed on appeal," appellant maintains this is a situation in which "the credibility of the State's case has been so undermined that a reviewing court cannot have confidence in a verdict supported by the testimony presented." Specifically, appellant contends that because Tien's "testimony was not corroborated by an electronic surveillance or by any other witnesses," this Court should deem it incredible. For those reasons, appellant claims by two points of error that the evidence is legally and factually sufficient to sustain the conviction. We disagree.

The standards of review for legal and factual sufficiency of the evidence are well established and need not be detailed. *See* Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000); Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. Appellant was indicted for committing prostitution in violation of section 43.02 of the Texas Penal Code (Vernon 2003). Based upon the indictment, the trial court instructed the jury:

> if you believe from the evidence beyond a reasonable doubt
> that the Defendant, CHARMAINE EVETTE MOORE, did in
> Harris County, Texas, on or about the 7th day of September,

5

2001, knowingly agree to engage in sexual conduct, namely, sexual intercourse and/or deviate sexual intercourse, with B. TIEN, for a fee, then you will find the defendant "guilty" as charged in the information.

At the outset, we note that nothing in the Penal Code or the Code of Criminal Procedure requires the testimony of the complaining witness in a prostitution case to be corroborated by electronic surveillance or otherwise. Next, we acknowledge that in conducting legal and factual sufficiency analyses, we must remain cognizant of the factfinder's role and unique position–one that the reviewing court is unable to occupy. Hunter v. State, 92 S.W.3d 596, 604 (Tex.App.–Waco 2002, pet. ref'd). The jury determines the credibility of the witnesses and may believe some, all, or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App. 1991). Indeed, it is the jury that accepts or rejects reasonably equal competing theories of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex.Cr.App. 2001). Furthermore, the jury may resolve conflicts in the evidence in favor of either party. Kelley v. State, 968 S.W.2d 395, 398 (Tex.App.–Tyler 1998, no pet.). In this case, the two eyewitnesses to the offense, appellant and Tien, differed in their recollection of the events of September 7, 2001. Contradictions or conflicts between the witnesses' testimony, however, do not destroy the sufficiency of the evidence; rather, they relate to the weight of the evidence, and the credibility the jury assigns to the witnesses. Jimenez v. State, 67 S.W.3d 493, 505 (Tex.App.–Corpus Christi 2002, no pet.). In a legal sufficiency review, we must presume the trier of fact resolved any conflicts in favor of the prosecution. Turro v. State, 867

6

S.W.2d 43, 47 (Tex.Cr.App. 1993). It is evident the jury chose to believe Tien's version of the facts, and to disregard appellant's. Therefore, because Tien's testimony constituted direct evidence of the crime, the evidence is legally sufficient to sustain appellant's conviction. Appellant's first point of error is overruled.

Evidence to support a criminal conviction may be factually insufficient in two distinct ways. In the first, the evidence in support of the existence of a vital fact, considered as standing alone, is factually too weak to support it. *Goodman,* 66 S.W.3d at 285. The second type of factual insufficiency involves a balancing scale, where there is evidence on both sides of the question. *Id.* Here, appellant asserts the balancing scales tip in her favor because the State's case against her was not credible. Under this type of factual sufficiency analysis, the evidence must be so strong, so overwhelming, so much more extensive than the State's evidence that it renders the jury's verdict so contrary to the great weight and preponderance of the evidence that it is manifestly unjust. *See id.* at 286-87. In this case, Tien testified appellant offered to provide oral sex and sexual intercourse in exchange for $75. Appellant steadfastly maintained she only agreed to provide him with a massage. Given the absence of any massage equipment in appellant's minivan, appellant's failure to possess a massage therapist license from the State, and her impeachment by a prior conviction for prostitution[1], it was not unreasonable for a jury to

---

[1]Because prostitution is a crime of moral turpitude, appellant's conviction for the offense was admissible to attack her credibility. *See* Holgin v. State, 480 S.W.2d 405 (Tex. Cr.App. 1972); *see also* Tex. R. Evid. 609(a).

have disbelieved her testimony and to have trusted that of Tien. Furthermore, the jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. Griffith v. State, 976 S.W.2d 686, 690 (Tex.App.–Tyler 1997, pet. ref'd). We conclude the jury did just that–it discredited appellant's protestations that she had given up the life of prostitution and awarded credence to the officers whose testimony established otherwise. Because the record does not clearly reveal a different result is appropriate, we must defer to the jury's determination concerning the weight of the testimony. Having viewed all the evidence, both for and against the verdict, we cannot say the evidence supporting the verdict is so weak or the verdict is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. In short, the evidence is factually sufficient. Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.