

# NUMBERS 13-16-00654-CR & 13-16-00667-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TOMMY WHITE,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

**On appeal from the 319th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

In two separate but related causes, appellant Tommy White was convicted of

assault family violence by impeding breath or circulation, a third-degree felony, *see* TEX.

PENAL CODE ANN. § 22.01 (West, Westlaw through 2017 1st C.S.), and theft of property

in an amount greater than $1,500 but less than $20,000, a state-jail felony, *see id.* § 31.03

(West, Westlaw through 2017 1st C.S.). White argues on appeal that the evidence was

legally insufficient to support his convictions for assault and theft. We affirm.

## I. BACKGROUND

In cause No. 16-CR-0488-G, White was charged with assault family violence by impeding normal breathing, *see id.* § 22.01; in cause No. 16-CR-0496-G, White was charged with theft of property in an amount greater than $1,500 but less than $20,000.[1] *See id.* § 31.03.

Paula Kahla[2] testified that she met White in November of 2014 and that they began a relationship in January of 2015. Kahla testified that she owned a business that installed gutters. According to Kahla, White worked for her as a salesman, but instead of receiving a paycheck, Kahla allowed White to live with her without paying rent and provided for his food and clothing. Kahla claims that on June 15, 2015, she and White had an argument about dog food. During the argument, White allegedly grabbed her by the arms and threw her on the couch. Kahla claims that White then put his forearm on her throat, which she described as painful and it caused her to feel lightheaded and have trouble breathing. White threatened that if she did not tell him that she loved him, he would kill her. Kahla claims that after she told him "what he needed me to tell him," she asked him to leave. She admitted on cross-examination that she told White that "he could take everything if he would just leave." However, White did not want to leave, and

---

[1] Appellate cause number 13-16-00654-CR, dealing with White's assault family violence by choking conviction, is the appeal of trial court cause number 16-CR-0488-G. Appellate cause number 13-16-00667-CR, dealing with White's theft conviction, is the appeal of trial court cause number 16-CR-0496-G.

[2] We note that White refers to claimant exclusively as "Kayla," whereas the State refers to her occasionally as "Kayla" but more predominantly as "Kahla." Even though her name is mentioned once or twice as being spelt "Kayla" in the record, her name is spelt "Kahla" much more frequently. More importantly, when questioned directly about her name at trial, she responded that her name is spelt "K-A-H-L-A." Therefore, we will refer to her as Kahla.

Kahla claims that she did not call the police because White told her that "[e]ven if the police got here, you'd be dead already." Within the next day, Kahla left the house while White continued to live there for the next several days until he was evicted by the constable on June 19, 2015.

Kahla also testified that on June 18, 2015, White pawned several items that belonged to her, including a power washer and attachments. Kahla asserted that she never gave him permission to pawn those items. Kahla testified at trial that the value of everything White pawned was "almost two grand." Her receipts were then admitted into evidence; Kahla reviewed the receipts and stated that they accurately depicted the items that she had purchased and that White later pawned. These receipts indicate that the items she purchased in March of 2015 totaled $757.72 while the items she purchased in May of 2015 totaled $1,081.42.

On October 17, 2016, a bench trial was held, and the two cases were tried together. The trial court found White guilty on both counts. For the assault conviction, the trial court sentenced White to four years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice; for the theft conviction, the trial court sentenced White to eighteen months' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, which the trial court suspended for five years of community supervision. This appeal ensued.

## II. LEGAL SUFFICIENCY

In cause number 13-16-00654-CR, White argues that the evidence was legally insufficient to support his conviction for assault; in cause number 13-16-00667-CR, White

argues that the evidence was legally insufficient to support his conviction for theft.

## A. Standard of Review and Applicable Law

There is "only one standard to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt:   legal sufficiency."   *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).   In this review, we consider all the evidence in the light most favorable to the verdict to determine whether the finder of fact could have found each of the essential elements of the offense beyond a reasonable doubt.   *See id.*   When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict.   *See id.*   The factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Even the testimony of a single witness can be sufficient to support a felony conviction. *See Agullar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Shah v. State*, 403 S.W.3d 29, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge.   *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).   Such a charge in this case would state that a person commits the offense of assault family violence by choking if the person intentionally, knowingly, or recklessly causes bodily injury to a household member or a person with whom the accused is in a dating relationship with by impeding the normal breathing or circulation of the person or by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.   *See* TEX. PENAL CODE ANN. § 22.01.   Such a charge would state that a person

4

commits theft if he unlawfully appropriates property with intent to deprive the owner of property.   *See id.* § 31.03.

## B. Assault Family Violence

White does not challenge the finding that White and Kahla were in a qualifying dating relationship.   Rather, White challenges the legal sufficiency of the evidence that he choked her or impeded her breathing.

The Penal Code defines "bodily injury" broadly to include "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8) (West, Westlaw through 2017 1st C.S.).   Any physical pain, however minor, may establish bodily injury, and the fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it.   *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *Crow v. State*, 500 S.W.3d 122, 129 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

The Court of Criminal Appeals has held that "impeding" breath does not require that the defendant prevent the victim from breathing altogether, but merely that the defendant hinder or obstruct the victim's breathing.   *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) (finding that smothering the victim with a pillow, such that "she was unable to take deep breaths," was sufficient to show an impeding of normal breathing).

Kahla's testimony at trial established that White threw her to the couch and then placed his forearm on her throat.   She claimed that it was painful and that it caused her to have difficulty breathing and to feel lightheaded.   White claims that this evidence is

5

insufficient because Kahla did not submit any medical reports and because Kahla's arms and legs were bruised, not her neck. However, the State did not need to prove that Kahla's neck was bruised. *See* TEX. PENAL CODE ANN. § 1.07(8). And Kahla did not need to provide medical records; Kahla's testimony alone was sufficient to support the conviction. *See Agullar*, 468 S.W.2d at 77. Looking at all of the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that White committed the offense of assault family violence by choking. *See Temple*, 390 S.W.3d at 360. We overrule White's appellate issue in cause number 13-16-00654-CR.

## C. Theft

A person unlawfully appropriates property if it is done "without the owner's effective consent." *See* TEX. PENAL CODE ANN. § 31.03(a), (b). Consent from the owner is not effective if it was induced by coercion. *See id.* § 31.01(3)(A). Coercion is "a threat, however communicated . . . to commit an offense [or] to inflict bodily injury in the future on the person threatened or another." *Id.* § 1.07(a)(9)(A).

White argues that he did not unlawfully appropriate Kahla's property because she told him that he could take anything if he would leave. White asserts that her consent was effective. However, Kahla only told White that he could take anything after he had assaulted her and threatened to kill her if she did not tell him that she loved him. The trial court could have believed Kahla's testimony and concluded that her consent was not effective because it was induced by coercion.

A person's intent to deprive the owner of the property is determined by the words

6

and actions of the accused. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981); *Villarreal v. State*, 504 S.W.3d 494, 516 (Tex. App.—Corpus Christi 2016, pet. ref'd). The trial court could have believed that White intended to deprive Kahla of the items he sold and further disbelieved White's testimony that he intended to buy the items back from the pawn shop. *See Chambers*, 805 S.W.2d at 461.

At the time of the offense, theft was a state-jail felony if the value of the property stolen was between $1,500 and $20,000. For purposes of theft, value is generally defined as "the fair market value of the property or service at the time and place of the offense." The owner may testify as to his or her opinion concerning the value of their property, which is presumed to be the fair market value and is sufficient evidence of that value. *See Sullivan v. State,* 701 S.W.2d 905, 909 (Tex. Crim. App. 1986); *Sanchez v. State*, 521 S.W.3d 817, 820 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Lieber v. State*, 483 S.W.3d 175, 178 (Tex. App.—San Antonio 2015, pet. ref'd); *Jimenez v. State*, 67 S.W.3d 493, 505–06 (Tex. App.—Corpus Christi 2002, pet. ref'd).

In the present case, Kahla testified that the value of the property that White took and pawned was "almost two grand." The receipts entered into evidence confirmed that the purchase price of the items stolen totaled $1,839.14, which is more than the $1,500 minimum for state-jail felony. By excluding one of the items listed on the receipts and by excluding taxes, White argues that the total value of the items was only $1,498.00. However, Kahla testified that White stole and pawned everything listed on the receipts, and the trial court could choose to believe her testimony. *See Chambers*, 805 S.W.2d at 461. Looking at all of the evidence in the light most favorable to the verdict, we

conclude that a reasonable factfinder could find beyond a reasonable doubt that White unlawfully appropriated Kahla's property with the intent to deprive her of that property. *See Temple*, 390 S.W.3d at 360. We overrule White's appellate issue in cause No. 13-16-00667-CR.

### III. CONCLUSION

We affirm the trial court's judgments.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of June, 2018.

8