In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-395 CR


____________________



JERRY LILLARD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Cause No. 24,309






MEMORANDUM OPINION


 The indictment charged Jerry Lillard with theft of a tractor, bush hog, two garden
tillers, and U.S. currency from Mary Dorsett. The jury found Lillard guilty of felony theft,
and the trial court sentenced him to ten years in prison and imposed a $5,000 fine.

 A person commits the offense of third-degree felony theft if he (a) unlawfully
appropriates property (b) with intent to deprive the owner of the property, and (c) the value
of the property stolen is $20,000 or more, but less than $100,000. Tex. Pen. Code Ann. §
31.03(a),(e)(5) (Vernon Supp. 2005). The Penal Code states, "When amounts are obtained
in violation of [the Penal Code's theft chapter] pursuant to one scheme or continuing course
of conduct, whether from the same or several sources, the conduct may be considered as one
offense and the amounts aggregated in determining the grade of the offense." Tex. Pen.
Code Ann. § 31.09 (Vernon 2003).

 Lillard raises four issues regarding the legal and factual sufficiency of the evidence. (1)
 
In assessing the legal sufficiency of the evidence, "the relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt." Moff v.
State, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) (quoting Jackson v. Virginia, 443 U.S.
307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "In a factual sufficiency review, the
appellate court views all the evidence in a neutral light and determines whether evidence
supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt
or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt
standard could not have been met." Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim.
App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). We
review all evidence that the jury was permitted to consider. Moff, 131 S.W.3d at 488. 

 After Mary Dorsett and her sister met Lillard in 2001, he would "drop by" their home
on a "regular basis" to see "how things were going." He said he knew their mother and
brother, although the brother denied knowing him and Mary testified Lillard only met her
mother once. Lillard began doing odd jobs for the sisters. Over the course of time, Lillard
suggested various deals, including the sale of some of the Dorsetts' real property, the renting
of their pasture, and the sale of their horses. As described by Angelina County's investigator,
Lillard's pattern was to continuously come to the Dorsetts and say he needed more money
for various things and they would write him checks and sometimes give him cash. The
investigator also testified the Dorsetts felt they had been "conned" by Lillard. 

 Mary Dorsett testified Jerry Lillard lied to her, "tricked" her, and stole her property. 
She described how he took money under false pretenses; how he agreed to do certain work
for her, but did not complete the work or return her property; how he stole her tillers; and
how he bilked her out of money in a land scheme he orchestrated. The alleged work included
farm maintenance and repairs on a tractor and bush hog. Dorsett described how Lillard took
the tractor and bush hog from her property and did not repair it or return it to her even after
repeated requests to do so. Lillard also told her some of her property taxes had not been paid,
and she wrote him checks with the understanding he would pay those taxes for her. Dorsett
said she discovered she had already paid some of those taxes. Although Lillard had receipts
showing he paid some of the taxes, the amounts he took from Dorsett for the taxes were
greater than the sums he paid to the taxing authorities. Dorsett also gave Lillard money to
handle the filing of her income taxes, but he never did so; Dorsett had to tend to the taxes
herself. 

 Lillard challenges the sufficiency of the evidence on two of the elements of theft: 
"intent to deprive" and the value of the stolen property. The Texas Penal Code defines
"deprive" as follows: 

 (A) to withhold property from the owner permanently or for so extended a
period of time that a major portion of the value or enjoyment of the
property is lost to the owner;

 (B) to restore property only upon payment of reward or other
compensation; or

 (C) to dispose of property in a manner that makes recovery of the property
by the owner unlikely.


Tex. Pen. Code Ann. § 31.01(2) (Vernon Supp. 2005). The Penal Code defines "value" as
the fair market value of the property or service at the time and place of the offense, or if the
fair market value cannot be ascertained, the cost of replacing the property within a reasonable
time after the theft. Tex. Pen. Code Ann. § 31.08(a) (Vernon 2003). The Court of Criminal
Appeals has defined fair market value as "the dollar amount the property would sell for in
cash, given a reasonable time for selling it." Simmons v. State, 109 S.W.3d 469, 473 (Tex.
Crim. App. 2003) (citing Keeton v. State, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991)); see
also Tex. Pen. Code Ann. § 31.08(a).

 To prove the value of the property was at least $20,000, the State relied on Dorsett's
testimony and on State's Exhibit 6, a summary of various checks Dorsett wrote to Lillard
over the course of a two year period. In describing monies Lillard had taken from her,
including cash and the checks listed on the exhibit, Dorsett testified as follows: 

 After I found out actually what was going on with this whole situation . . . I
went back on my notes and everything and I actually figured it up with the
cash that I could remember that I had paid him, plus all of the checks, and it
came to over $20,000. That did not include the tractors, the diesel or the
gasoline, or the bush hog. 

 . . . .

 [I]t was . . . over $20,000 that I have figured up that I had paid him--that he
had tricked me out of since I knew him in 2001. 


Both the State and defense counsel elicited detailed testimony about the individual checks
on the list. The checks total $14,290.46. That amount does not include the value of the
tractor and bush hog, or the amount of cash Lillard took from her.

 Dorsett acknowledged that Lillard sometimes performed work for her, and some of
the checks on the list were payments for that work. Those specific checks, along with other
checks (on the list) that Dorsett could not remember, are not evidence of theft. Similarly, she
admitted some of the work was paid for in cash.

 The largest check in Exhibit 6 was for $8,000, $7,000 of which Dorsett testified was
for reimbursement of the buyer's earnest money on a land deal. Dorsett explained Lillard
had wanted her to sell some of the real property she owned jointly with her siblings. She
described how Lillard handled the land deal for her, took money from the prospective buyer
for the down payment, and gave her $5,000. She later found out the buyer's down payment
was $7,000, and Lillard kept the remaining $2,000 for himself. Dorsett testified she used the
$5,000 cash he did give her to pay him for work he did for her. After the land deal collapsed,
Dorsett wrote Lillard the $8,000 check for him to reimburse the buyer, but Lillard never gave
the money to the buyer.

 Lillard disputed Dorsett's account. He testified he did not initiate the land deal and
the $8,000 check made out to him was not for the earnest money. A notation Dorsett
handwrote on the check stated "farm labor." Dorsett explained she wrote on the checks
whatever Lillard told her to write; he denied that. She testified the $8,000 was not for farm
labor. Ultimately, Dorsett retained an attorney to assist her in regaining the personal property
she claims Lillard stole from her, and, through her attorney, she reimbursed the buyer his
$7,000 down payment. 

 In addition to the $8,000 check, Dorsett testified to other checks she wrote to Lillard
and through which she claims he stole from her. These checks included real property taxes
that she said she had already paid ($600); money for a four-wheeler on which Lillard had
promised her a refund ($848); money for a land survey he never had done ($287); payment
for work he did not do ($700): and money for handling her income taxes ($968). As
supported by Dorsett's testimony and Exhibit 6, the total of those checks is $11,403. Lillard maintains he earned the money or was properly reimbursed for amounts
Dorsett owed him. Lillard also testified he kept records of his dealings with the Dorsetts, but
all his receipts were taken from his house after his arrest. 

 Dorsett testified Lillard agreed to repair a diesel tractor for her. The tractor had a bush
hog with it. Dorsett testified Lillard removed the tractor and bush hog from her property, but
never completed the repairs and never returned the equipment to her. His explanation for not
returning the equipment was that it belonged to Mary's mother, Dorothy Dorsett, who had
instructed him to make certain "that the tractor was never returned to Dorsett and her sister." 
Dorsett testified Lillard offered the excuse of a snakebite for his failure to return the
equipment. On another occasion, he said he had colon cancer, although he later testified the
diagnosis was a mistake. Lillard also testified Dorsett never asked him to return the tractor. 
 Dorsett testified the value of the tractor was approximately $4,000, and the value of
the attached bush hog was from $300 to $3,000. She indicated she could not pinpoint the
bush hog's value more precisely. Lillard, who explained he had worked for a tractor
company and had rebuilt many tractors, valued the tractor at $2,500 and the bush hog at
$500. Lillard argues Dorsett's testimony regarding value is insufficient because it is not
supported by expert testimony and the amount is merely an estimate. However, an owner
may testify to the value of her own property. Sullivan v. State, 701 S.W.2d 905, 908 (Tex.
Crim. App. 1986); Valdez v. State, 116 S.W.3d 94, 98 (Tex. App.--Houston [14th Dist.] 2002,
pet. ref'd) (Owner may testify in terms of purchase price or replacement cost, and is
presumed to be testifying to an estimation of fair market value.). Should the defendant wish
to rebut the owner's testimony, the defendant must offer controverting evidence of the
property's value. Morales v. State, 2 S.W.3d 487, 489 (Tex. App.--Texarkana 1999, pet.
ref'd). Lillard did not object to the value given by Dorsett for the tractor and bush hog; he
did offer his own opinion of the tractor's value. The jury could have accepted Dorsett's
$4,000 valuation of the tractor and the lowest valuation given by Dorsett on the bush hog
($300) or the value assessed by Lillard ($500). See Valdez, 116 S.W.3d at 96, 98 (lowest
number); Ray v. State, 106 S.W.3d 299, 301-02 (Tex. App.--Houston [1st Dist.] 2003, no pet.)
(range of value); Jiminez v. State, 67 S.W.3d 493, 505-06 (Tex. App.--Corpus Christi 2002,
pet. ref'd).

 In summary, Dorsett testified generally that Lillard had "tricked" her out of "over
[$]20,000," including cash. Disputing much of her testimony, Lillard testified he loaned the
Dorsett sisters over $9,000, paid their taxes for various years, bought the Dorsetts various
equipment parts totaling almost $2,000, and did work for them. The evidence on the element
of value is conflicting. 

 With respect to evidence of the "intent to deprive" element, Lillard maintains he and
the Dorsett sisters had an ongoing working relationship, and he argues the evidence is legally
and factually insufficient to show he intended to permanently deprive them of the tractor, the
money, and other property. See Tex. Pen. Code Ann. § 31.01(2) (Vernon Supp. 2005). The
intent to deprive is determined from the accused's words and acts. King v. State, 174 S.W.3d
796, 810 (Tex. App.--Corpus Christi 2005, pet. ref'd) (citing Griffin v. State, 614 S.W.2d
155, 159 (Tex. Crim. App. 1981)). The fact-finder may infer intent from any facts that tend
to prove its existence, including the method of committing the crime. King, 174 S.W.3d at
811. Here, the indictment alleged theft by deception. Deception means the following: 

 (A) creating or confirming by words or conduct a false impression of law
or fact that is likely to affect the judgment of another in the transaction,
and that the actor does not believe to be true;

 . . . .

 (E) promising performance that is likely to affect the judgment of another
in the transaction and that the actor does not intend to perform or knows
will not be performed, except that failure to perform the promise in
issue without other evidence of intent or knowledge is not sufficient
proof that the actor did not intend to perform or knew the promise
would not be performed. 


Tex. Pen. Code Ann. § 31.01(1)(A),(E) (Vernon Supp. 2005). There is evidence in the
record of a pattern of conduct whereby Lillard -- intentionally creating false impressions of
fact, and promising, but not intending to perform -- took two tillers, a tractor and bush hog,
money from a land deal, and money for various jobs he claimed he would do. 

 In a legal sufficiency review, we look at all of the evidence in the light most favorable
to the verdict to determine whether the evidence is sufficient to convict. Vodochodsky v.
State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We consider the totality of the
circumstances. Id. Dorsett explained Lillard "tricked me, he betrayed me[.]" "[H]e lied to
me, he tricked me out of my money." "[H]e took me for over $20,000." Dorsett testified
about the checks Lillard had obtained from her under "false pretenses." She also testified of
cash she had on hand to pay him for work he claimed to have done and expenses he
represented he incurred. She testified to the value of the tractor, bush hog, and tillers and
explained under what circumstances they were never returned. Lillard testified he did the
work she asked him to do, and he said he loaned Dorsett money. He also indicated Dorsett
gave him the tillers and offered various reasons for not returning the tractor and bush hog.
The jury was free to resolve the conflicts in the evidence. Valdez, 116 S.W.3d at 99. A
rational jury could conclude from the evidence of the checks, cash, tractor, bush hog, and
tillers that Lillard intended to deprive Dorsett of the money and goods, and the total was
$20,000 or more, but less than $100,000. The evidence is legally sufficient.

 In a factual sufficiency issue, the reviewing court considers all the evidence in a
neutral light and sets aside the verdict if "proof of guilt is so obviously weak as to undermine
confidence in the jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof." Vodochodsky, 158 S.W.3d. at 510 (quoting
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Here, when viewed in a neutral
light, the evidence of the amount of cash taken and the value of the bush hog is weak and
undermines confidence in the jury's verdict. In addition to the checks, tractor, bush hog, and
tillers, Dorsett testified she had cash she used to pay Lillard, and she testified the total
amount taken by Lillard under false pretenses was over $20,000. Only if the cash is factored
into the "value" element or if the bush hog had a value at the high end of her range, is the
amount of $20,000 reached. However, the only cash mentioned specifically, other than in
Dorsett's conclusory testimony, was the $5,000. Her testimony is ambiguous regarding
whether she gave the cash to him in payment for work performed. At one point, Dorsett
appeared to concede the $5,000 cash should not be included in calculating the total because
it was for work actually performed. That testimony weakens and undermines confidence in
the verdict concerning the total value of the property taken. We conclude the evidence -- that
the value of the property taken exceeded $20,000 -- is factually insufficient to support the
verdict. Issue one is sustained; issues two and four are overruled. 

 Because the evidence that the value of the amount taken exceeded $20,000 is factually
insufficient, we reverse and remand the case for a new trial. (2)


 REVERSED AND REMANDED.

 ____________________________

 DAVID GAULTNEY

 Justice



Submitted on February 7, 2006

Opinion Delivered April 12, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ. 







 
1. In issue five, Lillard also argues the trial court erred in failing to find he was totally
indigent and in requiring him to pay a portion of the cost of the reporter's record. This issue
is moot as appellant has caused a reporter's record to be filed in this case, and we have
considered it on appeal. See Fleming v. State, 987 S.W.2d 912, 922 (Tex. App.--Beaumont
1999), pet. dism'd, improvidently granted, 21 S.W.3d 275 (Tex. Crim. App. 2000); Reyna
v. State, 797 S.W.2d 189, 194 (Tex. App.--Corpus Christi 1990, no pet.). Issue five is
overruled. 

2. We need not dispose of issue three, the factual sufficiency point on "intent to
deprive," since remand on that issue would afford no greater relief.