NO.
12-04-00085-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

GARY
CLIFFORD ABBOTT,         §          APPEAL FROM THE 

APPELLANT

 

V.        §          COUNTY
COURT AT LAW NO. 2 OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION ON REHEARING 

            We grant
Appellant’s motion for rehearing, withdraw our opinion and judgment issued
June 30, 2006, and substitute the following in its place.  

            Appellant Gary
Clifford Abbott appeals his conviction for insurance fraud.  In four issues, Appellant asserts that the
evidence is not legally or factually sufficient to support his conviction and
that the trial court imposed unreasonable conditions of community
supervision.  We reform the judgment to
delete restitution as a condition of community supervision and affirm the
conviction and sentence.

 

Background

            Appellant was charged by indictment
with insurance fraud.[1] 
The indictment alleged that, on or about December 30, 2001, in Smith
County, Texas, Appellant, 

 








with intent to defraud or deceive an insurer, namely Encompass,
present[ed] to said insurer in support of a claim for payment under a property
and casualty insurance policy, the value of said claim being $1,500 or more but
less than $20,000, a statement that the defendant knew contained false or
misleading information concerning a matter affecting the right of the defendant
to a payment, and the matter was material to the claim in that it concerned
whether property was damaged or lost in the manner and under the circumstances
described in a statement related to a claim for insurance payment.[2]  

 

Appellant pleaded “not
guilty.” 

            At his trial, a jury found Appellant
guilty of the charge as alleged in the indictment.  After ordering a presentence investigation
report, the trial court assessed punishment at two years of confinement in a
state jail facility, probated for five years with one hundred days as shock
probation.  The court also ordered
Appellant to pay a fine and restitution. 
Additionally, the court ordered weekly reports from Appellant concerning
matters of his business, buying and selling automobile parts.  An appeal followed, and we affirmed Appellant’s
conviction and the order of restitution. 
Abbott v. State, No. 12-04-00085-CR, 2005 Tex. App. LEXIS
10702 (Tex. App.–Tyler Dec. 30, 2005) (mem. op., not designated for publication).  Subsequently, pursuant to Texas Rule of
Appellate Procedure 50, we withdrew our prior opinion and remanded the matter
to the trial court for a determination of the just amount of restitution, if
any.  Abbott v. State, No.
12-04-00085, 2006 Tex. App. LEXIS 2649 (Tex. App.–Tyler March 31, 2006, pet.
ref’d) (mem. op., not designated for publication).  A hearing was held on restitution and a
reporter’s record of that hearing was transmitted to this court.  After consideration, we issued another opinion
affirming the trial court.  Abbott
v. State, No. 12-04-00085, 2006 Tex. App. LEXIS 5905 (Tex. App.–Tyler
June 30, 2006) (mem. op., not designated for publication).  Appellant filed a motion for rehearing
asserting that he was not afforded an opportunity to submit further briefing on
the issue of restitution because the clerk of the trial court never submitted a
supplemental record as required by our March 31 order.  We then set a briefing deadline for Appellant’s
amended brief and the State’s response.  Appellant filed an amended brief, but the
State did not file a response.

 

Evidentiary
Sufficiency

            In his first and second issues on
appeal, Appellant argues that the evidence is legally and factually
insufficient to support his conviction. 
More specifically, Appellant contends there is no evidence that he “caused
to be prepared or presented to the insurer a statement he knew contained false
or misleading information.”   

Standard of
Review

            “Legal sufficiency is the
constitutional minimum required by the Due Process Clause of the Fourteenth
Amendment to sustain a criminal conviction.” 
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio
1999, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979)).  The standard of  review is whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671
(Tex. Crim. App. 2000).  The evidence is
viewed in the light most favorable to the verdict.  Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; LaCour, 8 S.W.3d at 671.  The conviction will be sustained “unless it
is found to be irrational or unsupported by more than a ‘mere modicum’ of the
evidence.”  Moreno v. State,
755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 
The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury’s domain.   Id. 
The jury is entitled to draw reasonable inferences from the
evidence.  Benavides v. State,
763 S.W.2d 587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d).  If a reviewing court finds the evidence
legally insufficient to support a conviction, the result is an acquittal.  Tibbs v. Florida, 457 U.S. 31,
41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).  

            In reviewing factual sufficiency, we
consider all the evidence weighed by the jury that tends to prove the existence
of the elemental fact in dispute and compare it to the evidence that tends to
disprove that fact.  Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict, our evaluation should not substantially intrude upon the jury’s role
as the sole judge of the weight and credibility of witness testimony.  Id.; see Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  Where there is conflicting evidence, the jury’s
verdict on such matters is generally regarded as conclusive.  Van Zandt v. State, 932 S.W.2d
88, 96 (Tex. App.–El Paso 1996, pet. ref’d). 
Ultimately, we must ask whether a neutral review of all the evidence,
both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.  Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside “only if
the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.”  Ortiz
v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see also Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); Sims v.
State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). 

Legal
Sufficiency

            A person commits the offense of
insurance fraud if, with intent to defraud or deceive an insurer, he causes to
be prepared or presents to an insurer in support of a claim for payment under a
health or property and casualty policy a statement that he knows contains false
or misleading information concerning a matter that is material to the claim,
and the matter affects his right to a payment or the amount of payment to which
he is entitled.  Tex. Pen. Code Ann. § 35.02(a).

            Joe Byron Roach, a senior
investigator for Appellant’s insurance company, has eighteen years of
experience in law enforcement and fourteen years as an insurance
investigator.  He investigates unusual
claims.  At trial, Roach testified that
Appellant filed a theft claim for over $16,000 and that he denied Appellant’s
claim.  The court admitted into evidence
copies of the initial claim documents Appellant submitted to the insurance
company.  The paperwork included a sworn “Affidavit
of Vehicle Theft” that Appellant completed and submitted along with his
claim.  Additionally, the State produced
a copy of an internal estimate of the damages to Appellant’s vehicle that was
prepared by the insurance company as a direct result of Appellant’s filing his
insurance claim. 

            Chad Kersey, an officer with the
Tyler Police Department, testified that he responded to a call on December 30,
2001 when Appellant reported his white GMC truck had been stolen.  Kersey noted in his report that he found no
broken glass after examining the area of the parking lot of the Wingate Inn
where Appellant said he had left the truck overnight.  Jamie Blankenship, a patrol deputy at the
Rusk County Sheriff’s office, testified that on December 30 at 8:30 in the
morning, he found a stripped white GMC pickup truck on County Road 186.  Blankenship said that the truck had been
stripped “clean,” explaining that this was unusual.  Blankenship testified that most stripped
vehicles have wires ripped and hoses cut. 
On this truck, the wires had been unplugged and he noticed no physical
damage to the vehicle other than the parts having been removed.  Blankenship further explained that, in his
experience, most stripped vehicles have wires “ripped out” because the people
committing the crime are in a hurry. 

            Jerry Wallace, owner of a wrecker
service, testified that he retrieved the truck from the county road where
Blankenship found it and took it to his place of business.  Wallace said that within a few hours,
Appellant picked up his truck, loading it onto a trailer.  Wallace noted that this was unusual for a
person who had his vehicle stolen. 
During his seventeen years in the business, it had been Wallace’s
experience that owners of stolen vehicles typically allowed the insurance
company to handle the details, including paying his fees for towing the
vehicle.  Wallace said that although the
truck was parked outside, he would have moved it to the covered garage upon
request.

            Gary King, detective with the East
Texas Auto Theft Task Force and the Tyler Police Department, was assigned to
the case on January 17, 2002.  King said
that Appellant never called him to check on the status of the
investigation.  At King’s request,
Jeffrey Maeker, a sergeant with the Department of Public Safety Motor Vehicle
Theft Service in Tyler, seized the truck from Appellant’s property on August
14, 2002 on a warrant.  Maeker testified
that after he seized the truck, he identified several parts original to the
truck that had previously been stripped, but were back on the truck.  Specifically, Maeker matched the numbers on a
door and air bag with the vehicle identification number of the truck.  Maeker said that owners are typically upset when
their vehicles are sequestered.  However,
Maeker testified that Appellant did not complain or attempt to prove to him
that he had paid for the parts put back on the truck.

            From this testimony, including all
reasonable inferences, a rational trier of fact could have found that
Appellant, with intent to defraud an insurer, prepared a claim for payment that
he knew contained false or misleading information (that his truck had been
stolen and damaged).  See Tex. Pen. Code Ann. § 35.02(a).  Therefore, viewing the evidence in the light
most favorable to the jury’s verdict, we conclude that a rational trier of fact
could have found the elements of insurance fraud beyond a reasonable doubt.

Factual
Sufficiency

            In addition to the evidence
discussed above, Appellant and his wife related their version of the events
relating to the insurance claim. 
Appellant’s wife, Terry Abbott, testified that she had driven her
Corvette to Tyler on December 29 to do some after Christmas shopping.  She received a phone call from Appellant
telling her that he was driving from their home and business in Eustace to
Tyler to buy some parts from the Harley dealership.  She met him at the dealership where they
discovered that the store was closed for inventory.  They left the truck there and drove the
Corvette around Tyler looking at classic cars. 
Later, they decided to spend the night in a Tyler hotel.  They picked up Appellant’s truck and drove
both vehicles to the hotel.  After
checking into the hotel, the couple drove the Corvette to dinner.  They then decided to drive back home, get
some clothes, and check on their pets.  

            On the drive home, they hit a bag of
leaves.  Upon arriving at their home,
Appellant put the Corvette up on a lift to check for damage.  Terry gathered their clothing and watched
television.  Once Appellant finished
working on the Corvette, the couple drove back to Tyler, arriving at the hotel
between 1:00 and 2:00 in the morning. 
Around 10:00 the next morning, Appellant walked out to the hotel parking
lot.  He saw that his truck was missing,
and he called the police to report that his vehicle had been stolen.  After giving their report to an officer, the
couple started home.  On the way to
Eustace, the police department called, saying they had found Appellant’s truck.

            Appellant’s wife testified that
after they recovered the stripped vehicle, she eventually ran an ad in the
newspaper.  The ad ran from June 26 to
July 7, 2002 and read, “REWARD: $4,000, no questions asked for parts taken from
2001 GMC pickup on Dec. 30 in Tyler, TX. . . .” 
She explained that since they owned an auto repair shop, they were in a
good position to repair the truck themselves. 
Further, obtaining the original parts would be more cost efficient than
buying replacement parts. 

            Appellant testified on his own
behalf.  He said that buying vehicles
both to collect and trade is his hobby. 
Of the ten to twenty vehicles that they owned at the time of this
incident, the GMC truck was the only vehicle that was not paid in full.  The truck was fully insured while the paid
vehicles were not. 

            Appellant testified about his extensive
background in automotive repair, totaling over thirty years of experience.  Prior to starting his own business, he last
worked for a body shop owned by an insurance company.  Appellant stated that he was familiar with
how insurance claims are paid, having worked with the insurance aspect of the
auto repair business for approximately ten years.  

            Appellant explained that after
hitting the bag of leaves on the way to his house, he lost track of time as he
was repairing the damage to the Corvette’s spoiler.  Once he stopped working, he asked his wife if
she still wanted to return to the hotel in Tyler.  She stated that she did, and Appellant
estimated that they got back to the hotel around 2:30 in the morning.  They parked the vehicle they were driving on
the other side of the hotel.  Upon
awaking that morning, they used the swimming pool and hot tub before packing to
leave.

            Before the vehicle was stripped,
Appellant last saw it when he parked it in the hotel parking lot upon checking
into the hotel.  It was not until 10:00
the next morning as they were about to check out that Appellant noticed his
truck was missing.  After speaking to the
police officer and checking out of the hotel, Appellant received a phone call
on his cell phone as they were driving back to Eustace.  The sheriff’s department called to say that
his vehicle had been found, but it was stripped.  Appellant then called the wrecker service
where his truck had been towed and made arrangements to pick it up later that
day.  Appellant was anxious to get it to
his garage where, unlike at the wrecker yard, it would be covered and protected
from the weather.  He testified that upon
recovering the truck from the wrecker yard, a number of parts were missing,
including the front and rear bumpers, grill, fenders, hood, core support, fan
shroud, air conditioning control, radiator, left front door, rear doors,
tailgate, bed liner, trailer hitch, tires, and wheels.  The wires to the air conditioning control and
the left front door had been cut.  All other
wires had been unhooked.   

            Appellant claimed to have called
Detective King several times to check on the progress of the
investigation.  Appellant denied paying
someone to steal and strip his truck or doing it himself.  He said he learned that the hotel did not
have security cameras only after this incident. 
Appellant stated that he and his wife decided to run the ad for the
stolen parts after the insurance company denied his claim.  He testified that after they placed the ad,
they received a phone call from a woman claiming to know the location of the
parts.  Appellant arranged a meeting and
met two women in Walton, Texas.  The
women had some of the stolen parts including the hood, which he knew to be from
his truck because of a flaw in the paint job.  He gave them $4,000 in cash
for the parts although they did not have all of the missing parts.  Appellant spent an additional $2,500 to
replace the other missing parts.  He said
he did not report the women because he was interested only in getting the parts
back.  He explained that no cash
withdrawal showed on his bank account for these transactions because he kept at
least that much cash on hand for his business dealings.

            Appellant continued to make payments
on the truck even after the police impounded his vehicle.  Appellant testified that he thought the truck
had been stolen because “Chevrolet General Motor trucks are stolen so often,
and there’s so many theft rings.”               

            The jury may choose to believe some
testimony and disbelieve other testimony. 
See Margraves v. State, 34 S.W.3d 912, 919  (Tex. Crim. App. 2000).  Here, the jury determined the credibility of
the witnesses and resolved the evidentiary inconsistencies in the State’s
favor, which was its prerogative as fact finder.  Losada, 721 S.W.2d at 309.  In performing its function, the jury chose
not to accept the version of the facts presented by Appellant and his
wife.  Consequently, viewing the evidence
in a neutral light, we cannot say that the evidence supporting the verdict,
considered by itself, is too weak to support the finding of guilt beyond a
reasonable doubt.  Nor can we conclude
that the contrary evidence is so strong that the beyond a reasonable doubt
burden of proof could not have been met. 
Therefore, we conclude that the evidence was factually sufficient for
the jury to find Appellant guilty of insurance fraud as charged in the
indictment.  Accordingly, Appellant’s
first and second issues are overruled.

 

Court’s Imposition
of Community Supervision Requirements

            In his third and fourth issues,
Appellant asserts that the trial court imposed unreasonable conditions of
community supervision when it ordered him to pay $10,985.00 in restitution and
to submit an inventory of his automobile business to the East Texas Auto Task
Force every fifteen days.

Factual Basis
for Restitution

            In his third issue, Appellant
contends that there is no factual basis in the record to justify the trial
court’s order of restitution.  A trial
court has broad discretion in imposing conditions of community supervision.  See Tex.
Code Crim. Proc. Ann. art. 42.12 § 11(a) (Vernon Supp. 2006). However,
where the defendant is ordered to pay restitution as part of his community
supervision, the restitution amount must have a factual basis in the
record.  See Cartwright v. State,
605 S.W.2d 287, 289 (Tex. Crim. App. 1980).[3]  There are several limits to the trial court’s
discretion in ordering restitution.  See
Campbell v. State, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999).  “The amount must be just, and it must have a
factual basis within the loss of the victim.” 
Id. at 696.  The
restitution ordered must also be for the offense for which the convicted person
is criminally responsible.  Id.
at 697.  Finally, restitution is proper
only for the victim or victims of the offense for which the offender is
charged.  Id.

            On remand, a hearing was held on the
issue of restitution.  Lorie Grisham, a
probation officer with Smith County Community Service Department, testified
that Encompass Insurance was the named victim in the case against
Appellant.  Grisham said that she spoke
with Carol Tatman, an adjuster at Encompass, who provided the figures used to
reach the restitution amount of $10,985.92. 
Further, Grisham testified that Encompass sent records to the clerk of
the trial court that were included in the PSI report in support of the
restitution amount.  Those records, along
with an affidavit, are included in the PSI report. 

            The State does not assert that
Encompass paid the false claim, and Encompass’s investigator testified that the
claim was denied.  If Encompass had paid
the claim, it would have been entitled to restitution for that amount.  See Jimenez v. State, 67
S.W.3d 493, 506 (Tex. App.–Corpus Christi 2002, pet. ref’d).  Grisham testified that she had no personal
knowledge of any restitution owing to the insurance company.  In relevant part the affidavit included in
the PSI report  reads: “My name is Carol
Tatman, and on the 20th day of November, 2003, I suffered losses as a result of
this offense.  The losses I incurred
amounted to: Total $10,985.92.” 
Accompanying the affidavit are seven pages of what appears to be a
computer generated report of a payment history. 
No one from the insurance company testified, and the attached payment
history is not self-explanatory.  The
payees are Accent Reporting for court reporting services and various
investigators and attorneys.  Within the
seven pages is a three page bill from a law firm in Dallas.  The bulk of the work itemized in the attorney’s
bill appears to be for civil litigation expenses related to this matter.








            At the original sentencing hearing,
the assistant district attorney said that Encompass had to pay investigators to
investigate the claim and that they were entitled to those expenses as well as
their “civil expenses.”  By “civil
expenses,” we conclude he was referring to the expenses Encompass incurred
defending a civil lawsuit brought by Appellant after his insurance claim was
denied.  Indeed, Appellant testified that
he had sued the insurance company to recover on his insurance policy, and he
states in his brief that the expenses relate to the defense of the civil
lawsuit, although his citation to the record is to statements made by his own
trial counsel making the same assertion. 

            The State bears the burden of proof
on the issue of restitution.  See Tex. Code Crim. Proc. Ann. art.
42.037(k) (Vernon Supp. 2006). 
Restitution is appropriate for losses sustained by the victim “as a
result of the offense.”  See Tex. Code Crim. Proc. Ann. art.
42.037(c); see also Campbell, 5 S.W.3d at 696–97.  There is no direct evidence as to whether the
expenses claimed by Encompass relate specifically to the offense as
charged.  Beyond the conclusory affidavit
and the statements of counsel, the State did not demonstrate the basis for these
expenses.  Even if we accept Appellant’s
statement that these fees were expended by Encompass to defend the civil
lawsuit, we cannot conclude that the fees were losses sustained as a result of
the charged offense.  

            The charged offense was insurance
fraud accomplished by submitting a false claim. 
It was the claim, not the subsequent lawsuit, that was alleged in the
indictment, introduced into evidence, and proven to be false.  Encompass may have suffered financial injury
from that offense, but no injury is shown by the record.  The costs they incurred to defend a separate,
though related, civil action are not injuries caused by Appellant’s commission
of the charged offense.  As subsequently
amended, the insurance fraud statute allows for recovery by an insurance
company of legal fees.  See Tex. Pen. Code Ann. § 35.02(e) (Added
by Acts 2003, 78th Leg., ch. 605, § 1, eff. Sept. 1, 2003).[4]  But even if that statute covered the expenses
in this case, that section does not apply because this offense was committed
before the new section became law. 
Appellant’s bringing a lawsuit was simply not the offense charged in the
indictment, and the expenses relating to the lawsuit are not losses incurred as
a result of the offense.  Cf. Bailey
v. State, 171 S.W.3d 639, 642 (Tex. App.–Houston [14th Dist.] 2005, no
pet.) (Error for trial court to award restitution for offense of failure to
stop and render assistance where evidence showed that injuries were sustained
as result of related accident, and not caused by or increased by the charged
offense.). 

            If we do not accept Appellant’s
characterization of the billing, the record simply contains the State’s unsupported
characterization of the loss, the bare affidavit stating the loss, and the
billing records.  This is insufficient to
demonstrate a compensable loss caused by the submission of a false claim.  Reimbursement for costs to investigate a
false insurance claim might be appropriate as restitution, but we cannot
conclude that this billing represents those costs.  It is clear from the record that substantial
investigation was undertaken by law enforcement authorities in this
matter.  Given that the State bears the
burden of proof and did not show what the expenses were for, the only relevant
suggestion as to whether the expenses were incurred as a result of either the
lawsuit or the charged offense is Appellant’s statement that the expenses
related to the lawsuit.  

            As the Texas Court of Criminal
Appeals has noted, restitution in criminal cases is intended to compensate a
victim, but in the context of redressing wrongs to society as a whole.  Cabla v. State, 6 S.W.3d 543,
545-546 (Tex. Crim. App. 1999).  Restitution
in a criminal case is not designed to resolve all disputes the victim and the
convicted person might have.  Restitution
serves to benefit society, and society is benefitted by restitution “that is
directly related to the offenses for which a defendant has been charged and
convicted.”  Id.  The expenses incurred by Encompass in this
case were not directly related to the offense for which Appellant has been
convicted.  Accordingly, we hold that the
trial court erred when it ordered Appellant to pay the expenses incurred by the
insurance company to defend against the lawsuit brought by Appellant.[5]  Appellant’s third issue is sustained.

Submission of
Inventory Report

            The State asserts that Appellant
waived his fourth issue complaining of the court’s order that he submit an
inventory to the East Texas Auto Task Force every fifteen days detailing every
part or complete automobile owned by Appellant. 
We agree.  To preserve error for
appellate review, a party must make a timely, specific objection and obtain a
ruling.  Tex. R. App. P. 33.1(a); Saldano v. State, 70
S.W.3d 873, 889 (Tex. Crim. App. 2002). 
A defendant “must complain at trial to the [community supervision]
conditions he finds objectionable.”  Rickels
v. State, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003).  Failure to complain at trial constitutes a
waiver of any complaints a defendant may have had on appeal.  Id.  In this case, Appellant failed to object;
accordingly, any complaint is waived.  We
overrule Appellant’s fourth issue.

 

Disposition

            We reform the trial
court’s judgment to delete the award of restitution to Encompass Insurance,
and, as reformed, we affirm the judgment of the trial court.  

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion delivered January 24, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)











[1] See Tex. Pen. Code Ann. § 35.02(a) (Vernon Supp. 2006).





[2] An offense under
section 35.02(a) is a state jail felony if the value of the claim is $1,500 or
more but less than $20,000.  Tex. Pen. Code Ann. § 35.02(c)(4)
(Vernon Supp. 2006).





[3]
Based on Brewer v. State, No.
1270-03, 2004 WL 3093224, at *3 (Tex. Crim. App. May 19, 2004) (mem. op., not
designated for publication), the State argues that Appellant did not object to
the PSI report and so the judicially noticed facts contained within the
document may not be disputed.  But, when
asked whether he challenged the PSI report, Appellant’s counsel unequivocally
stated that he challenged the restitution claim.  Therefore, we 

Footnote continued.

 

conclude that the amount of
restitution was not an “unobjected–to” fact. 
See id.





[4] It is not clear that
attorney’s fees for ancillary lawsuits would be covered even under the new
statute.  The statutory provision is
broad, allowing the award of court costs and attorney’s fees to an affected
insurer, but a legislative analysis of the bill suggests that the bill was
passed to remedy a perceived problem of insurers not being awarded restitution
for money or property that they had provided in response to a false claim.  House Comm. on Insurance, Bill Analysis, Tex.
H.B. 1838, 78th Leg., R.S. (2003).  The
present case is slightly different as the insurance company did not pay any
money or provide any property as a result of the false claim.





[5] Because we have held
that the evidence did not support the award of restitution, we do not reach
Appellant’s arguments that the evidence submitted was hearsay and violated his
right to confront witnesses.